IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

DAVID A. MCBANE, )
 )
        Plaintiff, )
 )
v. ) Case No. CIV-10-386-FHS
 )
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
 )
        Defendant. )

**REPORT AND RECOMMENDATION**

Plaintiff David A. McBane (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. See, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. See generally, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on March 21, 1970 and was 39 years old at the time of the ALJ's decision. Claimant completed his GED. Claimant has worked in the past as a sewer and water maintenance worker. Claimant alleges an inability to work beginning January

3

23, 2006 due to limitations resulting from lumbar and thoracic degenerative disc disease, lumbar disc derangement, radiculopathy, diverticulosis, abdominal adhesions, coronary artery disease with a heart attack, hypertension, and depression.

### Procedural History

On January 2, 2008, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. An administrative hearing was conducted before ALJ Osly F. Deramus on July 20, 2009 in McAlester, Oklahoma. On February 19, 2010, the ALJ issued an unfavorable decision on Claimant's application. On August 25, 2010, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform less than a full range of sedentary work.

### Errors Alleged for Review

Claimant asserts the ALJ committed error in: (1) failing to properly evaluate the medical opinion evidence; (2) reaching a flawed RFC determination; and (3) engaging in a faulty credibility analysis.

**Medical Opinion Evidence**

In his decision, the ALJ determined Claimant suffered from the severe impairments of involving the back and heart. (Tr. 17). He concluded that Claimant retained the RFC to perform sedentary work, specifically finding Claimant was restricted to lifting and/or carrying no more than 10 pounds, standing and/or walking for no more than 2 hours in an 8 hour workday, sitting for no more than 6 hours in an 8 hour workday, occasionally stooping, crouching, crawling, kneeling, balancing, and climbing stairs, and an inability to climb a ladder. (Tr. 18). After consultation with a vocational expert, the ALJ concluded that Claimant could perform the jobs of charge account clerk and fishing reel assembler. (Tr. 26).

Claimant first contends the ALJ improperly rejected the opinions of two of his treating physicians, Dr. E. Alexander L'Heureux and Dr. Richard A. Hastings, II. Dr. L'Heureux rendered opinions on Claimant's condition in connection with a workers' compensation case. He restricted Claimant to occasional lifting of

5

no more than 5 pounds, pushing/pulling of no more than 10 pounds, no reaching away from the body, restricted standing and sitting providing for changing position every hour, no operation of machinery, no crawling, kneeling, squatting, climbing, bending, stooping, or twisting. (Tr. 187, 787).

Dr. L'Heureux completed a Medical Source Statement - Physical on Claimant on December 2, 2008 with a revision date of July 19, 2009. He limited Claimant to frequently lifting and/or carrying 5 pounds, occasionally lifting and/or carrying 5 pounds, standing and/or walking for 2 hours in an 8 hour workday, and sitting for no more than 2 hours in an 8 hour workday. He states Claimant would be required to lie down to manage pain and would be limited to 10 pounds in pushing and pulling. Dr. L'Heureux restricted Claimant from ever climbing, balancing, stooping, kneeling, crouching, crawling, and reaching and occasionally handling, fingering, and feeling. He also limited Claimant to not operating machinery or working in extreme temperatures. Dr. L'Heureux also required Claimant to be able to change position if he experienced back pain. (Tr. 811-13).

Dr. L'Heureux was clearly a treating physician to Claimant in addition to completing the workers' compensation paperwork. Claimant underwent surgery on February 17, 2007 that included anterior and posterior spine reconstruction and instrumented fusion

from L4 to S1 with decompressive laminectomy. (Tr. 789).

The ALJ recognized Dr. L'Heureux's status as a treating physician in his decision. (Tr. 21). He documented Claimant's medical visits with Dr. L'Heureux but found the physician's restriction were not consistent with Claimant's reported activities of daily living. Claimant had reported that he had spray painted his house and felt soreness from the activity, which the ALJ found inconsistent with Claimant's allegedly disabling pain. The ALJ also found Dr. L'Heureux had recommended vocational rehabilitation for Claimant which the ALJ found inconsistent with the restrictions Dr. L'Heureux had placed on Claimant. He also determined that Dr. L'Heureux's opinions were not supported by his treatment records since the doctor had found Claimant's x-rays showed good position and alignment and that a solid fusion was beginning to form. (Tr. 23).

Claimant first contends the ALJ failed to "discuss and evaluate" Dr. L'Heureux's November 7, 2008 opinion and its attendant restrictions. The ALJ did, in fact, discuss this latter opinion and discounted its content. (Tr. 22). No error is attributed to this argument.

Claimant next asserts the ALJ failed to provide specific and legitimate reasons for rejecting the opinions under the factors for evaluating the opinions of treating physicians set forth in Watkins

7

v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). Claimant specifically attacks the two bases provided to by the ALJ in rejecting Dr. L'Heureux's opinions on limitation. The source for the paint spraying comment is curious. Dr. Archana P. Barve states in a report on one "Kenneth McBane" dated June 16, 2008 that the patient's wife bought him a spray painter and he had been painting his house. It also states that the doctor was attempting to wean the patient off of OxyContin. (Tr. 794). As Claimant indicates, the medical record shows he had an allergic rash in reaction to OxyContin prior to June of 2008 and had been utilizing a Duragesic patch instead. (Tr. 223). This Court has serious doubts that this report pertains to this Claimant. The report also references only a lumbar postlaminectomy and not a fusion. (Tr. 794). Reliance upon this report to discount Dr. L'Heureux's opinion is, therefore, suspect.

As for the medical record being inconsistent with the level of restrictions imposed by Dr. L'Heureux, the ALJ failed to cite to specific portions of the record that contradict Dr. L'Heureux's findings. Moreover, one must read the specific question on the form on which Dr. L'Heureux stated Claimant should undergo vocational rehabilitation. The form has a "check off" box under the question, "Is vocational rehabilitation indicated? (i.e. As a result of the injury, is the employee unable to perform the same

8

occupational duties the employee was performing before the injury?" Dr. L'Heureux checked the box marked "yes." The question answered is whether Claimant could perform his past work and Dr. L'Heureux indicated he could not. The ALJ reads too much into this limited question and certainly cannot reject the opinion of a treating physician on such blatant ambiguity. On remand, the ALJ shall re-evaluate the opinions of Dr. L'Heureux under the Watkins factors including specific references to conflicting evidence in the medical record.

As for Dr. Hastings, he evaluated Claimant on November 3, 2008. After a physical examination, Dr. Hastings found Claimant should be restricted to no lifting in excess of 5 pounds, no climbing ladders, no prolonged standing in excess of 30 minutes without the ability to sit or lay down, no standing work activities, no overhead work activities, no work activities that require stress that could precipitate unstable angina, and no quota work activities or assembly line repetitive work activities. (Tr. 804).

The ALJ found Dr. Hastings was not a treating physician and only saw Claimant on two occasions for evaluation. He noted Dr. Hastings was hired by Claimant's representative, based his opinions on Claimant's "self-reported statements," and his opinion was inconsistent with the medical record as a whole. As a result, he

9

gave Dr. Hastings' opinion on Claimant's restrictions "little weight." (Tr. 23-24).

The ALJ should provide more specific references to the medical records which are inconsistent with Dr. Hastings' opinions on remand. While Dr. Hastings' opinions are not entitled to controlling weight, the ALJ appears to have discounted his opinions for reasons that would equally apply to the state agency physicians whose opinions the ALJ accepted. Namely, the advocate hired the physician and only sparsely saw Claimant. (Tr. 23-24).

### RFC Assessment

Since the opinion evidence of Drs. L'Heureux and Hastings must be re-evaluated, the ALJ shall also reassess Claimant's RFC in light of any restrictions which are accepted from these and any other medical sources.

### Credibility Determination

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. This Court has set forth the dubious foundation for the ALJ's

questioning of Claimant's credibility at least insofar as it relates to the report of spray painting his house. In light of this problem, the ALJ shall reassess Claimant's credibility.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order.

The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 15th day of March, 2012.

*[Signature]*
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE